John BROWN, Plaintiff–Appellant,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant–Appellee.

Docket No. 98–6128.

United States Court of Appeals, Second Circuit.

Argued March 19, 1999.

Decided April 1, 1999.

Troy G. Rosasco, Turley, Redmond & Rosasco, Islandia, N.Y. (Sarah H. Bohr, Sarah H. Bohr, P.A., Jacksonville, Fla., on the brief), for Plaintiff–Appellant John Brown.

Rosanne M. Harvey, Assistant United States Attorney (Deborah B. Zwany, Assistant United States Attorney, and Zachary W. Carter, United States Attorney, on the brief), Eastern District of New York, Brooklyn, N.Y., for Defendant–Appellee Kenneth Apfel.

Before: McLAUGHLIN, CALABRESI, and GIBSON,* Circuit Judges.

PER CURIAM:

Plaintiff-appellant John Brown appeals from a judgment of the United States District Court for the Eastern District of New York (Jacob Mishler, *Judge* ) affirming the magistrate judge's report which, in turn, upheld the decision of the Commissioner of Social Security denying Brown's claim to Social Security Supplemental Security Income ("SSI") disability benefits and Disability Insurance Benefits under 42 U.S.C. § 405(g). Without deciding whether substantial evidence supported the Administrative Law Judge's ("ALJ") conclusion that Brown was not disabled, a determination about which we have doubt, we reverse the Commissioner's decision because new medical evidence that Brown submitted to the Social Security Appeals Council following the ALJ's decision undermines the findings on which the ALJ's denial of Brown's claims was based.

BACKGROUND

Brown is fifty-three years old and has a high school education. From 1983 to September 1993, he worked as a kitchen aide and then a cook at a hospital. Brown left his job at the hospital on his doctor's orders following a car accident in which he, while driving, suffered a seizure and lost consciousness.

After the September 1993 accident, Brown was treated with an anti-seizure

---

* The Honorable John R. Gibson, Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

medication but continued to suffer from seizure episodes. He was taken to a hospital emergency room six times between October 1993 and March 1994 as a result of such episodes. On four of these emergency room visits, Brown reported that he had not taken his anti-seizure medication as prescribed.

In September 1994, Brown's family physician referred him to Dr. K.R. Shetty, a neurologist, who apparently has treated Brown since that time. Although Dr. Shetty initially told Brown that he could return to work, Brown continued to report that he was experiencing seizures. In June 1995, Dr. Shetty noted that Brown's seizures were "under poor control" and that Brown "is permanently disabled and is unable to hold any gainful employment."

Brown first applied for Disability Insurance benefits in January 1994 and for Supplemental Security Income ("SSI") benefits in April 1994. His applications were denied both times, and denied again in July 1994. Brown then requested a hearing before an ALJ. At Brown's hearing, held in March and August of 1995, the ALJ heard testimony from a court-appointed medical expert, from a court-appointed vocational expert, and from Brown.

In October 1995, the ALJ decided that Brown was not eligible for SSI or Disability Insurance benefits. Although the court-appointed doctor, Dr. John Holloman, had testified that Brown's condition was disabling, the ALJ rejected this, his own medical expert's opinion, on the ground that it was based on Brown's hospitalizations, which, the ALJ concluded, were for the most part caused by Brown's failure to take his anti-seizure medication. Relying on the vocational expert's testimony that a person who suffered occasional seizures could work safely and effectively in some light-duty jobs, the ALJ found that Brown was not disabled.

In April 1996, Brown appealed the ALJ's decision to the Social Security Appeals Council. In support of his appeal,

Brown submitted new medical evidence consisting of treatment records from an examination by an epileptologist in October 1995 and from three neuropsychological examinations that Brown had received in February, March, and April 1996. Prior to this point, Brown's neurological examinations, including at least one EEG, had not indicated significant abnormalities. During his neuropsychological exam in November 1995, however, video EEG monitoring recorded that Brown experienced nine seizures in twenty-four hours. And the neuropsychologist noted that Brown was "currently being considered as a possible candidate for epilepsy surgery to control intractable seizures." Furthermore, during his examination by the epileptologist, Brown told the doctor that he had experienced at least six mild seizures in the previous month. In March 1997, the Appeals Council denied Brown's request for review of his application, rendering the ALJ's determination the final decision of the Commissioner of Social Security.

In May 1997, Brown filed this action in the district court, seeking review of the Commissioner's decision. Both the government and Brown filed motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The district court granted the government's motion and denied Brown's motion, and Brown filed this appeal.

## DISCUSSION

### A. Standard of Review

■ We review challenges to the Commissioner's decisions to determine no more than whether they are supported by substantial evidence. 42 U.S.C. § 405(g) (1994); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence means " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59

S.Ct. 206, 83 L.Ed. 126 (1938)). But "[t]o determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir.1983) (per curiam). And "[o]ur responsibility is always to ensure that a claim has been fairly evaluated...." *Grey v. Heckler,* 721 F.2d 41, 46 (2d Cir.1983).

■ "Because the District Court's determination was governed by the substantial evidence standard, and because we must apply the same standard of review, 'our focus is not so much on the district court's ruling as it is on the administrative ruling.'" *Rivera,* 923 F.2d at 967 (quoting *Wagner v. Secretary of Health & Human Servs.,* 906 F.2d 856, 860 (2d Cir.1990)). In reviewing an ALJ's decision, we consider the entire administrative record, including new evidence submitted to the Appeals Council following the ALJ's decision. *See Perez v. Chater,* 77 F.3d 41, 46 (2d Cir. 1996).

### B. Determining Disability

To qualify as disabled for purposes of being entitled to disability benefits, an individual must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (1994).

■ Social security regulations set forth a five-step inquiry by which the Commissioner is to evaluate a claim for SSI disability benefits. *See* 20 C.F.R. §§ 404.1520, 416.920; *Perez,* 77 F.3d at 46.
The first step of this process requires the Secretary to determine whether the claimant is presently employed. If the claimant is not employed, the Secretary then determines whether the claimant has a "severe impairment" that limits her capacity to work. If the claimant has such an impairment, the Secretary next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the Secretary will find the claimant disabled. However, if the claimant does not have a listed impairment, the Secretary must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform her past relevant work. Finally, if the claimant is unable to perform her past relevant work, the Secretary determines whether the claimant is capable of performing any other work. If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then shifts to the Secretary to prove in the fifth step that the claimant is capable of working.

*Perez,* 77 F.3d at 46. In making his determination by this process, the Commissioner must consider four factors: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Mongeur,* 722 F.2d at 1037.

In applying the five-step framework to Brown, the ALJ found (1) that Brown was not engaged in substantial gainful activity; (2) that Brown had a severe physical impairment that significantly limited his ability to do basic work activities; (3) that Brown did not have one of the listed disabilities or an equivalent disability; (4) that Brown did not have the ability to perform his past work at the hospital; but (5) that Brown had a residual functional capacity to perform light work that was available in the national and regional economy. Brown argues that the ALJ erred in determining that his condition is not medically equivalent to the listed disabilities.

## C. Analysis

The ALJ based his determination that Brown was not disabled on three findings: (1) that the persistence of Brown's seizures was largely caused by his failure to take his medication as prescribed; (2) that the lack of findings of neurological abnormality and the infrequency of Brown's seizures did not support Dr. Holloman's conclusion that Brown's condition was equivalent to the listed seizure disabilities; and (3) that the infrequency of Brown's seizures left him able to work at light-duty jobs.

### 1. Brown's Purported Failure to Take His Medication

We have considerable doubt about the supportability of the ALJ's conclusion that most of Brown's seizures would not have happened if he had been taking his medication as prescribed. The record does reflect that on four of the six occasions between October 1993 and March 1994 that Brown suffered a seizure and was taken to a hospital emergency room, he reported that he had not taken his medicine. But the ALJ's finding that Brown would not have had seizures in these situations if he had been taking his medicine properly is a medical determination, and the ALJ did not ask Dr. Holloman about the potential link between Brown's lapses and the onset of his seizures. Nor, when Dr. Holloman cited his reliance on Brown's hospital records as the basis for his conclusion that Brown's seizures were uncontrolled by medication, did the ALJ question that reliance. In fact, the issue of Brown's apparent intermittent failure to take his medication did not arise at all during the initial hearing. Yet when the ALJ subsequently rejected Dr. Holloman's conclusions on this basis, and Brown's attorney asked for "a supplemental hearing ... with Dr. Holloman so that I may clarify his reasons for his expert medical opinion," the ALJ rejected that request.

Furthermore, Brown testified that he experienced seizures that did not require hospitalization, and his medical records referred to such seizures. Nothing in the administrative record indicates that these seizures were caused by a failure to take medication.

In addition to the records of Brown's hospital visits, the ALJ also relied on a blood test in March 1994 that showed that Brown did not have the levels of an anti-seizure medication, Tegretol, in his system that one would expect if he was taking Tegretol. As Brown points out, however, his doctor had taken him off Tegretol and placed him on a different medication, Depakote, one month prior to the blood test. The test did not examine levels of Depakote, and therefore could not reflect whether or not Brown was taking his medication.

Thus, while there is some evidence that Brown at times did not take his medication, the record does not reveal the extent of this problem. And the ALJ's opinion that most of Brown's seizures were caused by a failure to take his medication was based on his own interpretation of Brown's medical records. Moreover, despite his affirmative duty to compile a complete record, *see Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996), the ALJ did not ask the court-appointed medical expert, Dr. Holloman, about the extent to which Brown's failure to take his medication as prescribed had caused his seizures.

It follows that the ALJ came dangerously close both to failing to compile a complete record and to substituting his own opinion for that of a physician, something that we have repeatedly admonished the Commissioner to avoid doing, *see Rosa v. Callahan*, 168 F.3d 72, 78–79 (2d Cir.1999); *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir.1998); *Wagner*, 906 F.2d at 862. But the issue is a close one, and since for other reasons, given below, the judgment cannot stand, we need not decide whether, if these were its only defects, the Commissioner's decision should be affirmed.

### 2. Equivalency to Listed Seizure Disabilities

■ In the ALJ's analysis under step three of the five-step inquiry, he concluded that Brown's condition was not equivalent to a listed impairment because (1) "[Brown's] disorder is not documented by any neurological findings or EEG abnormalities and his symptoms are not descriptive of a typical seizure pattern"; and (2) "[Brown]'s episodes of seizure do not even closely approach the frequency described in Section 11.03," the listed impairment that the court's medical expert testified was equivalent to Brown's condition.

Appendix 1 to the Social Security regulations lists two impairments for seizure disorders:

> 11.02 Epilepsy—major motor seizures, (grand mal or psychomotor), document by EEG and by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month, in spite of at least 3 months of prescribed treatment. With:
>
> A. Daytime episodes (loss of consciousness and convulsive seizures) or
>
> B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.
>
> 11.03 Epilepsy—Minor motor seizures (petit mal, psychomotor, or focal), documented by EEG and by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations or unconventional behavior or significant interference with activity during the day.

20 C.F.R. pt. 404, subpt. P, app. 1, §§ 11.02–11.03. During Brown's hearing before the ALJ, Dr. Holloman classified Brown's seizures as a "mixed disorder" containing characteristics of both petit mal and grand mal seizures. He opined that Brown's condition therefore "has the equivalency of the same significance as having a severe petit mal disorder." On the other hand, Brown's treating physician, Dr. Shetty, asserts that Brown suffers from grand mal seizures that are "under poor control."

"For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990); *see also* 20 C.F.R. §§ 404.1526(a), 416.926(a) ("[A claimant's] impairment is medically equivalent to a listed impairment if the medical findings are at least equal in severity and duration to the listed findings.").

Brown's medical records show that he was taken to a hospital emergency room six times between October 1993 and March 1994 as a result of seizures. On four of these emergency room visits, Brown reported that he had not taken his antiseizure medication as prescribed. At his hearing, Brown testified that at that time he was experiencing a seizure approximately once in a two-month period. And it was undisputed at the time of the hearing that tests conducted by Brown's doctors had not generated findings of significant neurological abnormality. As noted above, it may well be that this evidence was sufficient to support the ALJ's conclusions that Brown's condition was not documented by neurological findings and that Brown's seizures when he was taking his medicine did not occur more frequently than monthly, and therefore that Brown's condition was not equivalent to either a § 11.02 or a § 11.03 listed impairment.

But the additional medical evidence that Brown submitted to the Appeals Council contradicts both of the bases for the ALJ's finding. The additional evidence included (1) video EEG monitoring showing that .

Brown experienced nine seizures in a twenty-four hour period; and (2) a notation that Brown told a epileptologist that he had experienced six mild seizures in the previous month. These facts alone appear sufficient to meet the conditions for a § 11.03 impairment. Thus, it could be that the ALJ's decision was correct at the time it was made, and that Brown's condition worsened between the time of the hearing and the time of this new evidence. Or perhaps Brown's medical records and testimony did not completely document his condition—for example, his records might have reflected only his major seizures, during which he lost consciousness, rather than his mild seizures during which he only lost awareness. Either way, however, the ALJ's determination that Brown's condition is not medically equivalent to either an § 11.02 or § 11.03 listed impairment is no longer a reasonable interpretation of the medical evidence in the record. We must therefore reverse the Commissioner's decision.

### 3. Residual Ability to Work

Having concluded that substantial evidence does not support the Commissioner's finding that Brown's condition does not meet, and is not equivalent to, the characteristics of a listed impairment, and having reversed the district court's decision on that ground, we need not address the issue of whether Brown has residual ability to secure gainful employment. *See Sullivan,* 493 U.S. at 532, 110 S.Ct. 885, *Perez,* 77 F.3d at 46.

### CONCLUSION

We hold that there is not substantial evidence in the administrative record before us supporting the Commissioner's determination that Brown's seizure condition does not render him disabled. In particular, the new evidence that Brown submitted to the Social Security Appeals Council—medical evidence documenting Brown's seizures with an EEG test and indicating that Brown may experience many more seizures than he originally appeared to—undermines the ALJ's analysis. We therefore reverse the district court's decision and remand to the Commissioner for further proceedings consistent with this opinion. The Commissioner may determine that the evidence in the record suffices to establish that Brown is disabled, or he may conduct additional hearings and receive additional evidence about Brown's condition before reaching a decision.