**Blanca CRESPO, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. 01 CIV. 1643(RMB).**

United States District Court, S.D. New York.

Sept. 22, 2003.

Jan Feldman, The Legal Aid Society, Bronx, NY, for plaintiff.

Susan D. Baird, Assistant U.S. Attorney, of counsel, James B. Comey, United States Attorney, Southern District of NY, New York, for defendant.

## *ORDER*

BERMAN, District Judge.

### I. Introduction

On February 26, 2001, Blanca Crespo ("Plaintiff" or "Crespo") commenced this action pursuant to Social Security Act § 205(g), 42 U.S.C. §§ 405(g) and 1383(c), seeking review of the denial of her application for disability benefits by Administrative Law Judge Jonathan E. Jacobs ("ALJ"), following a (very) brief hearing held on November 10, 1998 and reflected in a decision dated December 22, 1998 ("ALJ Decision"). *See* Plaintiff's Complaint, filed February 26, 2001 ("Compl."), at 1; Administrative Record ("Record" or "R.") at 12–22, 31–41. The ALJ found that, although Crespo had "congenital bone disease of both hips" and a " 'severe' medically determinable impairment," she was not "disabled" and was capable of doing sedentary work. R. at 13, 14, 21. On December 15, 2000, the Appeals Council of the Social Security Administration upheld the denial of Plaintiff's application for benefits, making the ALJ's decision "the final decision of the Commissioner of Social Security" ("Commissioner"). R. at 3–4 ("[T]here is no basis . . . for granting your request for review.").

On or about April 9, 2003, Plaintiff filed a motion, pursuant to the Federal Rules of Civil Procedure 12(c), for a judgment on the pleadings. *See* Plaintiff's Memorandum of Law ("Pl's.Br."). On or about June 19, 2003, Defendant also moved for judgment on the pleadings ("Defendant's Motion"). *See* Defendant's Memorandum of Law ("Def's.Br."). **For the reasons that follow, both motions are denied and the case is remanded to the Commissioner for further proceedings consistent with this opinion.**

## II. Background

Plaintiff, age 36 at the time, filed an application for benefits on August 11, 1997, *see* R. at 13, alleging disability as a result, among other things, of a congenital bone disorder affecting both hips, which resulted in several surgeries, including a total hip replacement on her right side on February 2, 1998 and a second surgery on March 30, 1998 to reattach her right hip, which had fractured and become dislocated during her recovery. *See* R. at 59–61, 75–80, 164. Plaintiff's claim was initially denied on November 5, 1997, and then again on March 10, 1998 following her November 24, 1997 request for reconsideration. *See* R. at 42–53 ("We have determined that your condition is not severe enough to keep you from working.... based on your age ..., education ..., and your experience, you can perform medium work."). Plaintiff filed a request for a hearing on May 6, 1998, and a hearing was held on November 10, 1998. *See* R. at 31–41, 54–56. At the hearing, which appears to have lasted approximately ten minutes, Plaintiff was represented by a non-attorney and she was the only witness to testify.[1] *See* R. at 31–41. The ALJ's decision, dated December 22, 1998, concluded that "[t]he claimant's impairment neither meets nor equals the requirements for any impairment listed in Appendix 1 to Subpart P, Regulations No. 4.... [t]he claimant's allegations of disabling symptoms and limitations are not considered fully credible .... [t]he claimant has the residual functional capacity to perform the full range of sedentary work.... [and][t]he claimant was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision." R. at 21–22. On or about December 15, 2000, the Social Security Administration Appeals Council denied Plaintiff's request for review of the ALJ's decision. *See* R. at 3–4.[2]

## III. Standard of Review

"A party is entitled to judgment on the pleadings only if it is clear that no material issues of fact remain to be resolved and that it is entitled to judgment as a matter of law." *Straw v. Apfel,* No. 98 Civ. 5089, 2001 WL 406184, at *2 (S.D.N.Y. Apr.20, 2001); *see also* Fed.R.Civ.P. 12(c). The Court "must construe the pleadings in the light most favorable to the party opposing the motion and assume the truth of all facts pleaded by the party opposing the motion." *Firpo v. Shalala,* 94 Civ. 3368, 1995 WL 92264, at *2 (S.D.N.Y. Mar.3, 1995). While the "court is generally limited to considering the factual allegations set forth in the pleadings.... the parties may incorporate certain materials into their pleadings" which may then be considered by the court. *Abiona v. Thompson,*

---

1. The hearing transcript indicates that the hearing began at 9:20 a.m. and ended at 9:30 a.m. *See* R. at 33, 41.

2. Among others, documents from one of Plaintiff's treating physicians, Dr. Elton Strauss, dated May 18, 2000, July 12, 2000 and October 13, 2000, were submitted to the Appeals Council as part of Plaintiff's appeal. *See* R. at 193–99.

237 F.Supp.2d 258, 265 (E.D.N.Y.2002) ("Here, the parties refer to the administrative record, regulations, and ALJ decisions in the pleadings. Therefore, these documents are deemed incorporated in the pleadings and may properly be considered by the Court."); *see also* F.R.C.P. 12(c).

The reviewing court "must first be satisfied that the claimant has had a 'full hearing under the ... regulations and in accordance with the beneficent purposes of the [Social Security] Act.'" *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir.1990) (citations omitted). It is the Commissioner's affirmative responsibility to develop the record in such a way as to ensure a full and fair hearing. *See, e.g., Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir.1999). The Commissioner will ordinarily give the opinions reached by a plaintiff's treating physician considerable weight since such persons are "most likely to provide a detailed, longitudinal picture of [the] medical impairment(s) and may bring unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." 20 C.F.R. § 416.927(d)(2); *see Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.1999). While the ALJ is not bound to accept the findings reached by the treating physician, he "cannot reject ... [the] diagnosis without first attempting to fill any clear gaps in the administrative record." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir.1999).

Review of a Commissioner's decision involves two levels of inquiry. *See Tejada*, 167 F.3d at 773. "First, the Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Id.* "Next, the Court examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Id.* Substantial evidence is "[m]ore than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938).

The United States Court of Appeals for the Second Circuit in *Brown v. Apfel* articulated the multi-staged disability benefits inquiry as follows:

The first step of this process requires the [Commissioner] to determine whether the claimant is presently employed. If the claimant is not employed, the [Commissioner] then determines whether the claimant has a "severe impairment" that limits her capacity to work. If the claimant has such an impairment, the [Commissioner] next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the [Commissioner] will find the claimant disabled. However, if the claimant does not have a listed impairment, the [Commissioner] must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform her past relevant work. Finally, if the claimant is unable to perform her past relevant work, the [Commissioner] determines whether the claimant is capable of performing any other work. If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then shifts to the [Commissioner] to prove in the fifth step that the claimant is capable of working.

174 F.3d 59, 62 (2d Cir.1999) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir.1996)); *see* 20 C.F.R. § 416.920.

## IV. Analysis

*The Administrative Hearing*

The hearing conducted by the ALJ on November 10, 1998 appears to have

lasted only ten minutes, *see* R. at 33–41, hardly enough time fully to develop the record in this case and to assess Plaintiff's credibility.[3] *See Perez,* 77 F.3d at 47 ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record. This duty exists even when the claimant is represented by counsel or ... by a paralegal." (citation omitted)); *Rodriguez v. Apfel,* No. 96 Civ. 1132, 1997 WL 691428, at *6 (S.D.N.Y. Nov. 4, 1997) ("While the length of the transcript is not dispositive, the ALJ's interview with [Plaintiff] is insufficient to sustain a finding that the ALJ's disability determination was based on an adequately developed record.").

In his decision, the ALJ casts doubt upon Plaintiff's credibility, apparently relying, in part, upon Plaintiff's statement that her medication "relieves the pain" to undermine her report(s) of severe pain. *See* R. at 16, 20, 34–35. The ALJ did not determine the extent to which the pain medication relieves Plaintiff's pain, what kind of pain medication she takes, or how often she takes it. *See* R. at 34–35. Plaintiff's reports of pain were supported by Dr. Elton Strauss, one of her treating physicians, who on August 18, 1998 wrote that "[o]ver the past few years, her pain has increased, especially in the right hip.... Analgesics are recommended and are taken every six hours for this pain." R. at 164.

Also, the ALJ appears to have relied upon Plaintiff's statement that she had taken the train to the hearing, as well as notations in the record that she traveled by train to her medical appointments, to determine that she could take public transportation to work. *See* R. at 17, 20, 33–34.

He did so without more fully investigating how easily and comfortably she was able to use such transportation. *See id.* Also, the ALJ briefly noted Plaintiff's walking cane and asked if she used braces or supports. *See* R. at 35–36 ("[D]o you use a cane or something to help you walk—oh, I see. Are you wearing any braces or supports? [Plaintiff's Answer:] No, I have platform shoes, special shoes."). He (unpersuasively) concluded that, following her two hip surgeries, Plaintiff no longer had "limited and painful range of motion," and that "she was able to ambulate with a cane." R. at 19.

The ALJ failed fully to develop the administrative record, depriving Plaintiff of "a full hearing under the ... Regulations and in accordance with the beneficent purposes of the [Social Security] Act." *Cruz,* 912 F.2d at 11 (citations omitted).

### ALJ's Decision

The ALJ endeavored to evaluate Plaintiff's claim pursuant to the regulations of the Social Security Commission ("Regulations"). *See* R. at 12–22, 20 C.F.R. § 416.920; *Brown,* 174 F.3d at 62. First, the ALJ found that Plaintiff had not worked since August 11, 1997. *See* R. at 13. Second, the ALJ found that Plaintiff's "condition significantly affects her ability to perform some basic work activities, such as standing and, therefore, she does have a 'severe' medically determinable impairment." R. at 13. Third, the ALJ concluded that "[d]isability cannot be established," because "the level of severity does not equal that contemplated for any of the Appendix 1 impairments." R. at 14. Because Plaintiff had no past relevant work history, *see* R. at 14, the ALJ next analyzed Plaintiff's residual work capacity to

---

**3.** The hearing transcript is nine pages in length. *See* R. at 33–41; *see also supra* note

1.

determine whether Plaintiff could perform other work (steps 4 and 5).[4] *See* R. at 14. He determined that Plaintiff "has the residual functional capacity to perform all work activities except for lifting more than ten pounds or standing and walking more than occasionally." R. at 14.

■ The ALJ has not marshaled "substantial evidence" of no disability. *See* R. at 13–14; *Brown,* 174 F.3d at 61 ("We review challenges to the Commissioner's decisions to determine no more than whether they are supported by substantial evidence."). Among other things, he does not appear adequately to have evaluated (i) reports from Plaintiff's treating physicians, Dr. Wen Shen and Dr. Elton Strauss; or (ii) reports from two medical consultants, Dr. Antonio De Leon and Dr. Alain DelaChappelle; or (iii) information in Plaintiff's medical records from North General Hospital, Mount Sinai Medical Center, and New York Diagnostic Centers. *See* R. at 14–17. For example, on February 9, 1998, Dr. Shen wrote that "[Plaintiff] will need assistance at home for several weeks during the recovery period in performing daily chores and in ambulation." R. at 182. On August 18, 1998, Dr. Strauss wrote that Plaintiff's congenital hip disease "has resulted in deformity of her pelvis as well as her femurs. She does not have normal anatomy and [has] poor muscle function. . . . [Plaintiff]continues to be physically disabled. . . . [S]he is **unable to ambulate long distances, nor to perform normal daily activities. She uses a cane for the simplest chores. She is totally incapacitated from doing any kind of labor. Taking mass transportation is also a handicap for her** . . . . **Please understand that [Plaintiff] is sig-

**nificantly disabled."** R. at 164–165 (emphasis added).

Dr. De Leon and Dr. DelaChappelle are consulting physicians who examined Plaintiff on September 3, 1997 at the request of the Social Security Administration. R. at 14, 98–102. Dr. De Leon, an internist, noted Plaintiff's complaints of "pain over the low back area with radiation for both hips, present all the time. Unable to sit, stand or walk for a long time." R. at 98. In his opinion, Plaintiff "is able to perform the following work related activities, sitting, no limitation, walking, standing, carrying, lifting, pushing, pulling slightly limited because of scoliosis and constant back and hip pain." R. at 100. Dr. DelaChappelle, a psychiatrist, also noted Plaintiff's complaints of hip pain and stated that "[t]he allegations are consistent with the findings of the interview." R. at 102. He found that Plaintiff "has a satisfactory ability to understand, remember and carry out instructions, and a satisfactory ability to respond appropriately to supervision, co-workers, and work pressures in a work setting." R. at 102; *see* 20 C.F.R. § 416.927(d); *Schaal v. Apfel,* 134 F.3d 496, 504 (2d Cir.1998).

As noted, Plaintiff's medical records show that she was diagnosed with, among other things, congenital hip dysplasia and underwent two significant surgeries in February and March 1998, including a complex right total hip replacement and, soon thereafter, reattachment of the right hip. *See* R. at 150–155. Following the surgery, Plaintiff continued to complain of pain and impaired mobility. *See* R. at 145–46. Dr. Strauss stated, on July 21, 1998, that Plaintiff "is *DISABLED* AND *UNABLE* to work for an undetermined amount of time." R. at 140 (emphasis in

---

4. Plaintiff had apparently never worked, other than two summer jobs as a teenager in the 1970s. *See* R. at 40.

original). On August 18, 1998, Dr. Strauss stated that Plaintiff "continues to be physically disabled." R. at 164.[5]

"If [the ALJ] find[s] that a treating source's opinion on the issue(s) of the nature and severity of ... impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, we will give it controlling weight." 20 C.F.R. § 416.927(d)(2); see Schaal, 134 F.3d at 504. If the ALJ finds that the opinion of the treating physician is not adequately supported or is not consistent with the record as a whole, then that opinion is not accorded controlling weight but is taken into consideration along with other factors, including reports from other physicians. 20 C.F.R. § 416.927(d)(2).[6] It is unclear from the record what weight (or analysis) the ALJ gave to Dr. Strauss' and Dr. Shen's opinions, and why.

The ALJ states that "by June 30, 1998, [Plaintiff] was described as doing quite well with no evidence of any significant disease. The examining physician [Dr. Strauss] reported that the claimant was walking much better and that her range of motion had improved." R. at 15. While Dr. Strauss did note some improvement in his June 30, 1998 office notes, he also noted Plaintiff's need for a continued "muscle strengthening program. Eventually, she will need reconstructive surgery on the [left] side." R. at 142. And, less than one month later, on July 21, 1998, Dr.

Strauss concluded, among other things, that Plaintiff was "*DISABLED* AND *UNABLE* to work for an undetermined amount of time," R. at 140 (emphasis in original).

The ALJ also states that "[a]lthough on the application she filed in August 1997, the claimant alleged she had been disabled all of her life because of her hip disorder, she did not complain of hip pain when seen at clinics in August 1996 or in June 1997.... [T]he claimant first sought treatment for her hip condition on November 17, 1997, even though she was seen by physicians for other complaints prior to that date." R. at 16, 17. This statement seems to ignore treatment received by Plaintiff for her hip condition throughout her life. See R. at 129. (Plaintiff "[h]ad multiple hip surgeries in the past for congenital disease.") (North General Hospital record dated June 26, 1997); R. at 164 ("Crespo was born with congenital hip disease .... Over the past few years, her pain has increased, especially in the right hip. She has been seen at Mt. Sinai Medical Center for the past few years.") (opinion of Dr. Strauss dated August 18, 1998). Additionally, while Plaintiff's chief complaint at August 2, 1996 and June 12, 1997 clinic visits cited by the ALJ, see R. at 16, may not have been hip pain, physicians' notes from both visits indicate that Plaintiff did describe her hip problems, see R. at 127–28, 131, and that an exam ordered during the June 12, 1997 visit showed "degenerative changes in the hip joints which

---

**5.** Dr. Strauss began seeing Plaintiff in February 1998 and he performed her two hip surgeries. See R. at 18–19, 139–55. Dr. Shen saw Plaintiff in December 1997 and again on January 13, 1998, and he also assisted in her first hip surgery. See R. at 18, 156–63. During his evaluation(s), Dr. Strauss noted that Plaintiff would need to have a left hip replacement in the future. See R. at 140, 142–43, 164.

**6.** "The various factors applied when the treating physician's opinion is not given controlling weight include: (i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." *Schaal v. Apfel*, 134 F.3d at 503.

appear to have increased when compared to a study of 7/23/93." R. at 126, 128.[7]

*Plaintiff's Cross Motion*

██ Plaintiff requests that the Commissioner's decision be reversed and that her application be remanded for the award of benefits. *See* Pl's. Br. at 24. The Court may either "direct that the case be (1) remanded for reconsideration by the Commissioner upon the existing record or upon a record to be amplified, or (2) remanded for calculation of benefits." *Balsamo v. Chater,* 142 F.3d 75, 81–82 (2d Cir.1998). The award of benefits is proper when "application of the correct legal principles to the record could only lead to one conclusion, [so] there is no need to require agency reconsideration." *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir.1987). Here, this record is inadequately developed and appears to reflect some conflicting evidence. The case should be remanded for further proceedings. *See Schaal,* 134 F.3d at 504 ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record.").

## V. Conclusion and Order

For the foregoing reasons, the parties' respective motions [15, 17] for judgment on the pleadings are denied. The case is remanded to the Commissioner for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).[8] No determination is made by this Court as to the merits of Plaintiff's claims.

The Clerk is respectfully directed to enter judgment and close this case.

---

7. Because the ALJ's step 3 decision was not supported by substantial evidence, it is not necessary to evaluate the ALJ's determination that Plaintiff was capable of performing sedentary work. *See Brown,* 174 F.3d at 65 ("Having concluded that substantial evidence does not support the Commissioner's finding that [Plaintiff's] condition does not meet, and is not equivalent to, the characteristics of a listed impairment, ... we need not address the issue of whether [Plaintiff] has residual ability to secure gainful employment.").

8. The Court notes that new regulations regarding musculoskeletal impairments went into effect on February 19, 2002. *See* Def's Br. at 14 n. 7; Pl's Br. at 22–23; Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66 Fed.Reg. 58010–11 (Nov. 19, 2001) (to be codified at 20 C.F.R. pts. 404 & 416).