Eric B. MACKEY, Plaintiff,

v.

Jo Anne B. BARNHART, as Commissioner of Social Security, Defendant.

No. 02 CV 4566(NG)(CLP).

United States District Court, E.D. New York.

Feb. 27, 2004.

Bari M. Lewis, Fusco, Brandenstein & Rada, P.C., Woodbury, NY, for Plaintiff.

Carolyn Lisa Miller, United States Attorney's Office, Brooklyn, NY, for Defendant.

## ORDER

GERSHON, District Judge.

Plaintiff, Eric B. Mackey, applied for Social Security disability insurance benefits on November 5, 1998, claiming disability from July 28, 1997. The application and subsequent request for reconsideration were denied. Plaintiff then requested a hearing, which was held on December 15, 1999, before Administrative Law Judge Michael S. London (the "ALJ"). By decision dated February 17, 2000, the ALJ affirmed the denial of benefits. Plaintiff then requested review by the Appeals Council. On June 26 2002, the Appeals Council declined plaintiff's request for review, and the decision of the ALJ became the final decision of the defendant Commissioner of Social Security (the "Commissioner").

Plaintiff then commenced this action seeking reversal of the Commissioner's decision. On August 19, 2003, the Commissioner moved for judgment on the pleadings to affirm the decision of the ALJ. On the same day, plaintiff submitted his opposition to the Commissioner's motion and moved for reversal and remand solely for an award of benefits on the ground that the ALJ failed to give proper weight to the opinions of plaintiff's treating physicians.

### Standard

■■■ Pursuant to the Social Security Act (the "Act"), the findings of the Commissioner as to any fact, "if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence has been defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal quotations and citation omitted). Thus, where the court finds that substantial evidence exists to support the Commissioner's determination, the decision will be upheld, even if contrary evidence exists. *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir.1998) (decision affirmed where there was substantial evidence for both sides). This standard applies to findings of fact as well as to inferences and conclusions drawn from such facts. *D'Amato v. Apfel*, 2001 WL 776945, at *3 (S.D.N.Y. July 10, 2001).

■■■ The court must also review the ALJ's decision to determine whether the ALJ applied the correct legal standard. *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir.1999). Where an error of law has been made that might have affected the disposition of the case, a court cannot fulfill its duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ. *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.1984). Thus, the court reviews *de novo* whether the correct legal principles were applied and whether the legal conclusions reached

by the ALJ were based on those principles. *See id.; see also Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir.1987).

 In order to establish entitlement to benefits under the Act, a plaintiff must establish that he or she has a "disability." 42 U.S.C. § 423; *See Balsamo v. Chater,* 142 F.3d 75, 79 (2d Cir.1998). The term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant shall be determined to be under a disability only if the claimant's physical or mental impairment or impairments are of such severity that the claimant is not only unable to perform the claimant's previous work but cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists for the claimant, or whether the claimant would be hired if the claimant applied for work. 42 U.S.C. § 423(d)(2)(A). In making a determination by this process, the ALJ must consider four sources of evidence: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Brown v. Appfel,* 174 F.3d 59, 62 (2d Cir.1999) (internal quotations and citation omitted).

 In evaluating a claim of disability, the ALJ must follow the five-step procedure set out in the regulations governing the administration of Social Security benefits. *See* 20 C.F.R. § 404.1520; *Diaz v.*

*Shalala,* 59 F.3d 307, 311 n. 2 (2d Cir. 1995). First, the ALJ must determine whether the claimant is engaged in substantial gainful activity. If not, the second step requires the ALJ to consider whether the claimant has a "severe impairment" that significantly limits his or her physical or mental ability to do basic work activities. If the claimant does suffer such an impairment, then the third step requires the ALJ to determine whether this impairment "meets or equals a listed impairment in Appendix 1" of the regulations. If the claimant's impairment meets or equals one of those listed, the claimant is presumed to be disabled "without considering the [claimant's] age, education, and work experience." If the presumption does not apply, then the fourth step requires the ALJ to determine whether the claimant is able to perform his or her past relevant work. Finally, if the claimant is unable to perform his or her past relevant work, the fifth step requires the ALJ to determine whether the claimant is capable of performing any other work. With respect to this last step, the burden of proof is on the Commissioner. *See* 20 C.F.R. § 404.1520.

### The Record

Plaintiff claims he became disabled on July 27, 1997, as a result of a work-related injury to his back two days earlier. Prior to his injury, plaintiff had worked as an assistant superintendent for a real estate company from 1995 until July of 1997, and as an unlicensed plumber from 1985 to 1995.

In connection with his injury plaintiff was examined by a chiropractor, Farrell Burk of Metro Medical P.C. ("Metro Medical"), on July 31, 1997. Dr. Burk observed that plaintiff, among other things: moved in a slow and guarded manner; had limited non-lateral bending; experienced muscle spasms and tenderness along his lum-

bar spine; and that straight leg raising, Soto–Hall, Kemp, and Ely tests were positive. Dr. Burk's impression was that plaintiff had thoracic and lumbar subluxations and recommended diagnostic tests of the cervical and lumbar spine. That same day plaintiff underwent x-rays which revealed mild multi-level degenerative spur formation and narrowing at the L4–L5 level.

On August 20, 1997, plaintiff was examined by Dr. Gordon Davis, of Metro Medical, who found moderate to severe back spasms and tenderness in plaintiff's lower spine with severely decreased range of motion. Dr. Davis diagnosed lumbosacral radiculopathy and severe lumbar sprain; he recommended physical therapy, chiropractic care and Soma compound for pain.

On September 22, 1997, plaintiff was examined by Dr. Barry M. Kaufman of Metro Medical, who found that plaintiff had right-sided lumbar spasm and tenderness and right sciatic nerve tract tenderness. Dr. Kaufman diagnosed lumbosacral radiculopathy and severe lumbar sprain. On September 30, 1997, plaintiff returned to Metro Medical, and was examined by Dr. William J. Lichtenfeld. Dr. Lichtenfeld examined plaintiff and observed that, although plaintiff had no muscle spasm or tenderness, he had decreased motor strength in his back. Dr. Lichtenfeld diagnosed plaintiff with myofascial lumbosacral pain syndrome with radiculopathy. At this time Dr. Lichtenfeld found that plaintiff was totally disabled.

On November 11, 1997, Dr. Davis again examined plaintiff and recommended continued physical therapy, chiropractic care and pain medication. On January 21, 1998, Dr. Davis noted severe spasm and tenderness in plaintiff's lumbar spine with severely decreased range of motion. Dr. Davis diagnosed lumbar disc syndrome, lumbalgia, lumbosacral radiculopathy, lumbar myofascitis, and severe lumbar sprain.

He recommended continued physical therapy, chiropractic care and pain medication and requested magnetic resonance imaging ("MRI") of plaintiff's lumbar spine. The MRI revealed a moderate left L3–L4 herniated disc with left L3 nerve root impingement.

Dr. Richard Radna, a neurosurgeon, examined plaintiff on three occasions, January 28, February 11 and July 29 of 1998; he found that plaintiff had diminished lumbar range of motion, moderate lumbar spasm and moderate restrictions of leg raising and Patrick's sign. Dr. Radna indicated that his review of an MRI revealed that there was multi-level discogenic and osseous lateral recessed stenosis which was indicative of nerve root compression. As a result, Dr. Radna determined on each occasion that plaintiff was totally disabled and recommended that plaintiff have surgery to avoid "impending neurological deficit."

Drs. Lichtenfeld and Davis, in three separate Residual Functional Capacity ("RFC") evaluations, completed on April 23, May 14, and June 25, of 1999, concluded that plaintiff is not capable of a full range of sedentary work. For example, Dr. Lichtenfeld, in his April 23rd RFC indicated that plaintiff can lift less than 10 pounds, stand or walk for less than two hours per day; sit less than six hours a day; and is limited in his ability to use his arms to push or pull. In his second RFC dated May 14, 1999, Dr. Lichtenfeld noted that plaintiff can occasionally lift less than 10 pounds and no more than 5 pounds frequently; stand or walk for less than a half hour at a time, less than one hour a day in total; has numerous postural restrictions; and his ability to reach, feel, push and pull is affected. Dr. Davis, in his RFC of June 25, 1999, indicated that plaintiff can occasionally lift less than 10 pounds and no more than one to five

pounds frequently; stand or walk for less than a half hour at a time, less than one hour a day in total; is significantly limited in postural activities; and is impaired in his ability to reach, feel, handle, push and pull. In support of this evaluation, Dr. Davis cites plaintiff's herniated lumbar disc with nerve compression, myofascitis, and chronic pain.

Dr. Holladay, a consultative examiner, who examined plaintiff on January 4, 1999 found that plaintiff had a full range of motion in all of his joints; was able to make a fist with both hands; had normal muscle strength with no atrophy; and appeared to have significant lower back pain and a restricted range of motion. Dr. Holladay gave a "guarded" prognosis of plaintiff's medical condition and expressed the view that plaintiff is moderately limited in his ability to lift, carry, stand, and walk, has mild limitations in his ability to sit and has no limitations to pushing or pulling of non-exertional controls.

### Discussion

The ALJ, after proceeding through each of the steps listed above, determined that plaintiff is not disabled. First, the ALJ noted that, as plaintiff had worked as an assistant superintendent for a real estate company from 1995 until July of 1997 and as an unlicensed plumber from 1985 to 1995, he had been engaged in a substantial gainful activity. Second, the ALJ concluded that the evidence established plaintiff has suffered impairments, including: "a severe disorder of the lumbosacral spine with radiculopathy as well as hypertension." Third, the ALJ found that, although plaintiff has severe impairments, they do not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. Fourth, the ALJ found that plaintiff's statements concerning his impairments and their impact on his ability to work were "not entirely credible" and were not supported by the record or the medical findings. Fifth, the ALJ concluded that, although plaintiff was unable to perform his past relevant work, his "capacity for sedentary work has not been compromised," and therefore plaintiff is not disabled within the meaning of the Act.

The ALJ, finding that the record contains inconsistencies which undermine the conclusions of Drs. Lichtenfeld and Radna, did not give their opinions controlling weight, and found that plaintiff is able to perform sedentary work. Plaintiff challenges the findings of the ALJ as contrary to the opinions of the treating physicians and unsupported by the record; specifically, he claims that his back problems render him unable to work. (Although plaintiff's alleged problems with hypertension are addressed by the ALJ and by the government in its motion, plaintiff does not raise them as a basis to overturn the ALJ decision; the court therefore accepts the ALJ's findings on this issue, *i.e.*, that plaintiff's hypertension is not disabling.)

Where a "treating source's opinion on the issue(s) of the nature and severity of impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it is entitled to] controlling weight." *Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir.1998); 20 C.F.R. § 404.1527(d)(2). Here, the ALJ failed to afford the opinions of plaintiff's treating physicians the proper weight.

Drs. Radna and Lichtenfeld, both treating physicians, found that plaintiff was totally disabled as a result of his back injuries. Drs. Radna's and Lichtenfeld's conclusions are supported by substantial objective medical evidence, including the MRI and X-rays, their clinical findings upon examination, the findings of Dr. Davis at Metro Medical and the find-

ings of the chiropractor, Dr. Burk. While chiropractors are not "acceptable medical sources" under 20 C.F.R. § 404.1527(a)(2), whose opinions are given controlling weight, a chiropractor is listed as an "other source," 20 C.F.R. § 404.1527(a)(2), whose opinions may be given "significant weight" under the appropriate circumstances. *See Diaz v. Shalala,* 59 F.3d 307, 313 n. 4 (2d Cir. 1995).

Rather than relying on the opinions of the treating physicians, the Commissioner relies on the findings of Dr. Karen Holladay, a consultative examiner, and the only doctor who found that plaintiff has only moderate to mild limitations. Dr. Holladay, who examined plaintiff on only one occasion, found that plaintiff was moderately limited in his ability to lift, carry, stand, and walk, and has mild limitations in his ability to sit. The opinion of a one-time consultative examiner is entitled to less weight than that of the treating doctors. Moreover, Dr. Holladay did not prepare an RFC.

Additionally, the ALJ did not credit plaintiff's testimony of constant, intractable pain, finding it was undermined by his statements regarding his daily activities, specifically, playing computer games, cards, and checkers, going to church, watching television, going to the store to buy newspapers, and exercising as part of his physical therapy. However, that plaintiff is capable of participating in these activities does not indicate that he is capable of sedentary work. The ALJ does not adequately explain how these limited activities contradict the determination made by plaintiff's treating physicians that as to plaintiff's limitations. In sum, the Commissioner failed to properly follow the treating physician rule, and her decision is not supported by substantial evidence. For these reasons the court finds that plaintiff was disabled within the meaning of the Act from the onset date of July 27, 1997.

### Conclusion

The court, after reviewing the decision of the Commissioner may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision with or without a remand for a rehearing. The court also may direct the Commissioner to award benefits, but that decision should be made only when the administrative record in the case has been fully developed and when substantial evidence on the record as a whole indicates that a claimant is entitled to benefits. *Balsamo v. Chater,* 142 F.3d 75 (2d Cir.1998).

Here, a remand for calculation of benefits for the period commencing on July 27, 1997 is appropriate. Two treating doctors, Drs. Radna and Lichtenfeld, supported by significant additional medical evidence, found plaintiff's impairments to be completely disabling, and there is insufficient evidence in the record to support the Commissioner's rejection of their opinions. Accordingly, the motion of the Commissioner is denied and plaintiff's motion is granted. I reverse and remand the case to the Commissioner solely for the purpose of calculating benefits. The Clerk of the Court is directed to enter judgment in accordance with this Order.

**SO ORDERED.**