Catherine MOLLO, Plaintiff,

v.

**Jo Anne BARNHART, Commissioner of Social Security, Defendant.**

**No.  03 CV 2545(ADS).**

United States District Court,
E.D. New York.

March 2, 2004.

Fusco, Brandenstein & Rada, P.C., by John Antonowicz, Esq., Woodbury, NY, for Plaintiff.

Roslynn R. Mauskopf, United States Attorney Eastern District of New York, by Richard T. Lunger, Assistant United States Attorney, Central Islip, NY, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Catherine Mollo ("Mollo" or the "plaintiff") commenced this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), challenging the final determination of the Commissioner of Social Security (the "Commissioner") denying disability insurance benefits to her. Both parties move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").

## I. BACKGROUND

### A. The Procedural History

On January 18, 1995, Mollo filed an application for social security disability insurance benefits, claiming disability since December 22, 1992 due to back pain. After her application initially and on reconsideration was denied, she requested a hearing before an administrative law judge ("ALJ"). On March 14, 1996, a hearing was conducted before Administrative Law Judge Murray Sklaroff ("ALJ Sklaroff"). The plaintiff appeared with her attorney. In a decision dated June 24, 1996, the ALJ Sklaroff found that Mollo was not disabled within the meaning of the Act and was therefore not entitled to disability insurance. On July 15, 1996, she filed a request for review with the Appeals Council. On October 17, 1997, the Appeals Counsel de-

clined to review the claim, making the ALJ's decision the final administrative determination.

On December 5, 1997, the plaintiff commenced an action with this Court under civil action 97 CV 7122. On December 5, 1998, this Court "so ordered" a Stipulation and Remand entered into by the parties. Subsequently, on February 8, 1999, the Appeals Council issued an Order remanding this matter to the Commissioner for further proceedings pursuant to the sixth sentence of 42 U.S.C. § 405(g).

On May 26, 1999, a second hearing was held before ALJ Sklaroff. The plaintiff appeared with her attorney. ALJ Sklaroff stated that he would consider all the evidence de novo including the new evidence. On June 16, 1999, ALJ Sklaroff again denied the plaintiff's claim, concluding that she was not disabled. On March 19, 2001, based on the exceptions to ALJ Sklaroff's decision filed by the plaintiff, the Appeals Council issued an Order, remanding this matter to a different ALJ for further administrative proceedings.

On July 17, 2001, a third hearing was conducted before Administrative Law Judge Richard Karpe ("ALJ Karpe"). Again, the plaintiff appeared with her attorney. ALJ Karpe considered the case de novo. On July 20, 2001, ALJ Karpe concluded that Mollo was not disabled during the relevant period. This decision became the Commissioner's final decision when the Appeals Council concluded on March 22, 2003 that there was no basis to review ALJ Karpe's decision. Subsequently, the plaintiff commenced this action under civil action 03 CV 2545, challenging ALJ Karpe's decision.

## B. The Record

### 1. The Plaintiff's Background and Testimony

Mollo was born on April 18, 1944, making her 51 years of age at the time of the first administrative hearing before ALJ Sklaroff. The plaintiff graduated from high school and worked as a full-time bookkeeper for a retail company. On December 22, 1992, the plaintiff fell at work and injured her back. She reported that she was disabled from December 22, 1992 through April 15, 1996, the date on which she states her condition improved to the extent she was able to return to work.

At the first hearing in March 1996, Mollo testified that she was awarded Workers' Compensation benefits as a result of her injury. The plaintiff described her back pain as radiating to her lower extremities which restricted her abilities to sit, stand, and walk. Mollo said that she could lift or carry small items, such as dishes. She said that, although she was unable to do heavy housework, she was able to cook. The plaintiff further stated that her retired husband and her adult children assisted her.

Mollo testified that she initially received physical therapy for her condition until it was discontinued by her insurance company. The plaintiff reported that she then sought treatment from chiropractor Dr. Nancy Paritsky. In connection with her Workers' Compensation claim, the plaintiff began seeing an orthopedist, Dr. Jacob Lehman. She said that she was also evaluated by a neurologist, Dr. Henry Moreta. The plaintiff testified that her prescribed treatment during the relevant period consisted primarily of oral analgesic medication, which she did not take unless absolutely necessary. She indicated that she took over-the-counter medication, such as Tylenol and Advil.

On May 26, 1999, during the second hearing, Mollo testified that she still felt pain but that she was working part-time for a temporary agency. The plaintiff re-

ported that she stopped going to doctors, did not take prescribed medication, and tried to do pool exercises in order to get her strength back. Mollo stated that she was entitled to benefits through April 15, 1996, the date of her last visit with Dr. Lehman. According to the plaintiff, during the relevant period, she could not participate in many activities and was limited in performing household chores. The plaintiff testified that, while she could take care of her personal needs, she performed them slowly, so as not to aggravate her condition. Mollo testified she stopped seeing doctors because she "decided to try it on [her] own." She further testified that Dr. Lehman informed her that her pain "was something [she] was going to have to learn to live with."

At the July 17, 2001 hearing before ALJ Karpe, the plaintiff testified that she was unable to sit or stand for any length of time during the relevant time. The plaintiff stated that she had previously taken Vicodin. She also said that she had taken either Relafen or Flexeril. She testified that during the relevant time she had trouble sleeping because of her medication and that she felt "groggy" during the day.

### 2. The Diagnostic Tests

On February 2, 1993, Mollo underwent an magnetic resonance imaging test ("MRI") of the lumbosacral spine. The MRI revealed bulging of the fibrous annulus at L5 S1, but no gross disc herniation. The test also showed some dessication of the disc, suggesting degenerative changes.

A January 9, 1995 MRI of the lumbosacral spine showed evidence of degenerative disc disease with bulging annulus at the L5–S1, but no associated compression of the thecal sac or exiting nerve roots. Because a signal abnormality at the L1–2 level was noted, the examiner suggested comparing Mollo's 1993 MRI with this

finding to determine its significance. In comparing the January 1995 MRI to the February 1993 MRI, the examiner concluded that the appearance of the L5 S1 disc had not appreciably changed. In addition, the comparison revealed that there was no signal abnormality or abnormal enhancement within or around the thecal sac at the L1–2 disc level. The examiner attributed the previously described signal abnormality to a flow related artifact.

The results of a January 20, 1995 EMG revealed an abnormal electrodiagnostic examination consistent with right S1 radiculopathy. The examiner recommended that Mollo continue her treatment. A February 13, 1995 MRI showed no signal abnormality or abnormal enhancement within or around the thecal sac at the L1–2 disc level.

### 3. The Relevant Medical Evidence

Between November 3, 1993 to December 7, 1994, the plaintiff sought treatment from chiropractor Dr. Nancy Paritsky for pain in her lower back, numbness in her fingers and toes, a sensation of "pins and needles" in the arms and legs, and numbness in the fingers and toes. In an undated physical capacities evaluation form, Dr. Paritsky noted that Mollo could sit less than three hours, stand and walk less than two hours, and lift and carry ten pounds occasionally.

On September 20, 1994, Dr. Jacob Lehman, the orthopedic surgeon, saw the plaintiff on consultation. Based on a physical examination, Dr. Lehman noted that "there is good range of motion right shoulder. There is considerable muscle spasm over the lumber spine. Motions of the lumber spine are restricted 60% due to pain." Dr. Lehman stated that Mollo had a "marked disability" at this time. He advised her to continue chiropractic treatment and recommended that she see a neurologist. Dr. Lehman requested au-

thorization for an MRI of the lumbar spine. Dr. Lehman reported to the Workers' Compensation Board that her disability was "total."

On November 29, 1994, Dr. Lehman again treated the plaintiff and relayed his findings of tenderness and muscle spasm over the plaintiff's lower back with straightening of the normal lumbar lordotic curvature. He noted abduction of the right shoulder was to 150 degrees. Dr. Lehman stated that Mollo's right ankle reflex was diminished, but that all other reflexes were present. According to Dr. Lehman, the pain and muscle spasm in her back and pain radiating into her legs precluded her from performing any type of work, even light sedentary work on a part-time basis. He added that "this disability is expected to persist for more than one year from the time of [his] last examination."

On a follow up visit on February 13, 1995, Dr. Lehman observed that her left ankle reflex was present. The remaining examination findings were unchanged from the previous examination. Dr. Lehman also noted the January 1995 MRI finding of a desiccated L5 S1 bulging disc. In April 1995, Dr. Lehman completed a physical capacities evaluation, noting that Mollo could sit less than two hours, stand and walk less than one hour and lift and carry ten pounds occasionally. The doctor further noted that she could use her hands for sustained, repetitive action performing simple grasping/gripping, fine manipulation and reaching overhead. In addition, Dr. Lehman assessed that she could occasionally bend and reach during an eight-hour workday.

At Dr. Lehman's request, neurologist Dr. Henry Moreta examined Mollo on November 16, 1994. Based on an examination, Dr. Moreta observed tenderness of the lumbosacral and sacroiliac spine. Dr.

Moreta also noted that there was no significant hip joint tenderness and Patrick's sign was negative bilaterally. In addition, he reported positive straight leg raising test bilaterally. A neurological examination revealed that strength was full at grade 5/5 bilaterally and that sensation was normal to pinprick bilaterally. Dr. Moreta assessed deep tendon reflexes of the extremities were all equal 1+. Dr. Moreta observed that the plaintiff's gait was steady. Dr. Moreta also assessed lumbosacral sprain, post-traumatic myofascial pain and ruled out lumbosacral radiculopathy and herniated disc. He recommended a repeat MRI of the lumbosacral spine and continued chiropractic care.

On December 27, 1995, Dr. Moreta re-evaluated the plaintiff. He reported that the MRI diagnostic studies revealed no evidence of disc herniation or extruded disc fragment. Upon examination, the doctor noted left sacroiliac and left paralumbar tenderness. In addition, he stated that straight leg raising was negative and motor strength and sensation were unchanged. Dr. Moreta also stated that deep tendon reflexes were increased to 2+. His assessment was lumbosacral myofascial pain, bilateral heel arthritis or tendonitis. He ruled out systemic factors. Dr. Moreta recommended a trial of Advil and blood tests.

On February 15, 1995, state agency physician Dr. Alan Kaye completed a residual functional capacity report. Based on the January 1995 MRI and Dr. Moreta's November 1994 findings, Dr. Kaye opined that Mollo could lift and/or carry up to twenty pounds occasionally and up to ten pounds frequently. He further determined that she could sit and stand and/or walk for a total of about six hours each in an eight hour workday. Dr. Kaye noted that her ability to push and/or pull with her lower extremities was limited and that

she could occasionally perform the postural activities of climbing, stooping, kneeling, crouching and crawling, and frequently perform balancing. Dr. Kaye opined that she could perform reaching as tolerated by her back pain.

On March 22, 1996, psychologist Eugene Zanger, Ph.D., evaluated the plaintiff. During the examination, Dr. Zanger observed that Mollo was restless and unable to sit for longer than fifteen minutes at one time. Aside from this, Dr. Zanger stated that she was "very cooperative" and that "no unusual behavior was noted." He did not note that she was in pain. Dr. Zanger indicated that the plaintiff stated that she spent her days at home walking, reading, and watching television. Mollo also stated she and her husband go out once or twice a week to eat and sometimes visit friends. The plaintiff reported that she was taking an anti-inflammatory, a muscle relaxant, and a pain killer. Mollo also informed him that "ice packs on and off her back and swimming relieves her pain."

The plaintiff's answers to a coping strategies questionnaire showed that Mollo appeared "to be more of an active person than one who feels hopeless in dealing with her pain . . . ." A multi-dimensional pain inventory indicated that the plaintiff had the "same amount of control over her life as the normative group" but "seemed to do less household chores and less outdoor work than they do." Dr. Zanger also administered a John Hopkins test for validating the plaintiff's complaint of pain, which concluded that Mollo was "not exaggerating her pain" and that she has an "organic recognized syndrome." In a letter, dated April 15, 1996, Dr. Lehman stated that he "tend[ed] to agree" with Dr. Zanger's findings.

At the March 1996 hearing, ALJ Sklaroff took the testimony of medical expert Dr. Richard Goodman, a board-certified orthopedic surgeon who had reviewed the record and heard the plaintiff's testimony. Dr. Goodman testified that, although the plaintiff had subjective back pain, electrical studies were normal, which was consistent with, but not diagnostic of, S 1 radiculopathy. In addition, Dr. Goodman testified that MRI studies in 1993 and 1995 showed only a bulging disc, which in his opinion was a normal finding. According to Dr. Goodman, the fact that Mollo's reflexes and sensory perception were found to be normal by different medical sources is consistent with the essentially normal diagnostic studies. Dr. Goodman further indicated that the results of her tests were typical for someone the plaintiff's age. In light of the negative medical evidence and despite Mollo's subjective complaints, Dr. Goodman said that he was unable to substantiate any evidence of organic disease.

## II. DISCUSSION

### A. Standard of Review

A Court may set aside a determination by the Commissioner only if the decision is based on legal error or is not supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 174 F.3d 59, 61–62 (2d Cir.1999). Substantial evidence is "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Rather, substantial evidence requires enough evidence that a reasonable person "might accept as adequate to support a conclusion." *Brown*, 174 F.3d at 62–63.

In determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "to examine the entire record, including

contradictory evidence and evidence from which conflicting interferences can be drawn." *Id.* at 62 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir.1983) (per curiam)). In addition, the Court is mindful that "it is up to the agency, and not this court, to weigh the conflicting evidence in the record." *Clark v. Commissioner of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998). Indeed, in evaluating the evidence, " 'the court may not substitute its own judgment for that of the Secretary, even if it might justifiably have reached a different result upon de novo review.' " *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir.1991) (quoting *Valente v. Secretary of Health & Human* Servs., 733 F.2d 1037, 1041 (2d Cir.1984)).

## B. Analytical Framework

Federal disability insurance benefits are available to those individuals who are "disabled" within the meaning of the Act. *See* 42 U.S.C. § 423(a), (d). To qualify for disability benefits under the Act, a plaintiff must establish her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

■ The federal regulations set forth a five-step analysis that the Commissioner must follow in evaluating disability claims:

1. The ALJ must consider whether the claimant is currently engaged in substantial gainful activity.

2. If not, the ALJ must consider whether the claimant has a "severe impairment" which limits her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the ALJ must ask whether, based solely on medical evidence, that limitation is listed in Appendix 1 of the regulations.

4. If the impairment is not "listed" in the regulations, the ALJ then asks whether she has residual functional capacity to perform her past work despite her severe impairment.

5. If she is unable to perform her past work, the burden shifts to the ALJ to prove that the claimant retains the residual functional capacity to perform alternative work.

20 C.F.R. §§ 404.1520, 416.920; *Green–Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir.2003) (citing *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir.2002)). The claimant bears the burden of proof as to the first four steps, while the ALJ bears the burden of proof as to the fifth step. *See Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir.2000). In proceeding through the five-step analysis, the Commissioner must consider four factors: "(1) objective medical facts, (2) diagnosis or medical opinions based on these facts; (3) subjective evidence of pain and disability; and (4) the claimant's educational background, age, and work experience." *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir.1983).

## C. ALJ Karpe's Findings

ALJ Karpe denied Mollo's disability claim. Aside from the December 1995 report from Dr. Moreta and a February 1995 MRI report, ALJ Karpe concluded that there was very little "new" evidence, both medical and testimonial, since the previous proceedings.

Following the five-step procedure, the ALJ first determined that Mollo had "not engaged in substantial gainful activity" during December 22, 1992 through April 15, 1996. At steps two and three, the ALJ concluded that, although the plaintiff was "severely impaired" during the germane period, her impairment did not meet or equal the specifications of severity of any impairment in Appendix 1 of the regulations. Because the impairment was not listed, the ALJ proceeded to the fourth step and concluded that, based on Mollo's age, education, and work experience, she retained the functional capacity to perform sedentary work and, therefore, could return to her past relevant work as a bookkeeper. Accordingly, the ALJ found that Mollo was not disabled during the relevant time period under the Act.

Mollo challenges the ALJ's conclusion that she could perform her previous work during the relevant period. First, the plaintiff argues that the ALJ failed to appropriately weigh the various medical source statements in the record. Second, the plaintiff argues that the ALJ improperly failed to consider her subjective complaints of pain.

### D. Analysis

#### 1. The ALJ's Decision was Supported by Substantial Weight

■ The ALJ is required to accord special evidentiary weight to the opinion of the treating physician, as long as the treating physician's opinion is supported by medically acceptable techniques, results from frequent examinations, and the administrative record. *See Clark v. Commissioner of Soc. Sec.*, 143 F.3d 115, 119 (2d Cir.1998). However, if the opinion is not "well-supported" by objective evidence, the obligation to give controlling weight to a treating physician's opinion is inapplicable. *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir.1993). When controlling weight is not given to a treating physician's medical opinion, the ALJ must consider (1) the length of the treatment relationship and frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by medical and laboratory findings; (4) the physician's consistency with the record as a whole; and (5) whether the physician is a specialist. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Furthermore, the ALJ must provide "good reasons" for not crediting the opinion of a plaintiff's treating physician. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.1999) (citing *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir.1998)).

■ As a preliminary matter, the Court notes that conclusion by Dr. Lehman, the treating physician, that the plaintiff was totally disabled and could not perform any type of work was not determinative, as the ultimate issue of disability is reserved for the ALJ. *See* 20 C.F.R. §§ 404.1527(e), 416.27(e); *Snell*, 177 F.3d at 133 ("[S]ome kinds of findings—including the ultimate finding of whether a claimant is disabled and cannot work—are 'reserved to the Commissioner' ") (citing 20 C.F.R. § 404.1527(e)(1); *see also Murphy v. Barnhart*, No. 00 Civ. 9621, 2003 WL 470572, *7, 2003 U.S. Dist. LEXIS 6988, at *7 (S.D.N.Y. Jan. 21, 2003) ("The ALJ is not required to give controlling weight to a treating physician's opinions as to the ultimate issue of whether the claimant meets the statutory definition of disability."). "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability." *Snell*, 177 F.3d at 133. The ALJ is solely responsible for the final determination of a plaintiff's residual functional capacity. *See* 20 C.F.R. § 404.1546.

■ The Court finds that the ALJ properly evaluated the opinions of the plaintiff's treating physician, Dr. Lehman, and gave "good reasons" for not affording his assessment controlling weight. In particular, the ALJ noted that Dr. Lehman's opinion regarding the plaintiff's limitations was rendered after only three examinations and, therefore, were not premised on a longitudinal treatment history. *See* 20 C.F.R. § 404.1527(d)(2)(i)-(iii). Notwithstanding this, the ALJ correctly noted that Dr. Lehman's opinion was not supported by the record as a whole, as the opinion was not accompanied by clinical and laboratory findings. Indeed, diagnostic testing revealed the presence of a mild back impairment, with no evidence of disc herniation or nerve root compression.

Moreover, the clinical findings, including those of Dr. Lehman, revealed no neurological abnormality, such as motor, sensory or reflex deficit. In addition, Dr. Lehman's opinion regarding Mollo's limitations is inconsistent with the opinions of state agency consultant Dr. Kaye and Dr. Goodman who acted as a consultant to the ALJ. The ALJ considered the nature of the treating relationship, the lack of any evidence in support of Dr. Lehman's opinion, and the fact that his opinion was not supported by any other medical records. Furthermore, the Court observes that the ALJ did not completely disregard or ignore Dr. Lehman's assessments, but found that he could not conclude that Mollo was disabled based on Dr. Lehman's assessments. As such, the ALJ was correct in not assigning controlling weight to his opinion.

■ In addition, to the extent that Mollo argues that the ALJ improperly decided to give no weight to Dr. Partisky's findings, the Court notes that "a chiropractor's opinion is not a medical opinion." *Diaz v. Shalala*, 59 F.3d 307, 313 (2d Cir. 1995). As such, the Second Circuit has made clear that the ALJ is not required to give controlling weight to a chiropractor's opinion. *Id.* at 314. Here, Partisky opined in a physical capacities evaluation that Mollo could sit less than three hours, stand/walk less than two hours and lift/carry ten pounds. However, the fact that Partisky noted these limitations does not preclude a finding that Mollo was capable of sedentary work. Based on the medical evidence as set forth below, the ALJ found that these opinions were not supported by the objective medical evidence. Thus, the Court finds that there is substantial evidence supporting the ALJ's decision that Dr. Partisky's reports are contradicted by the balance of the objective medical evidence and therefore deserve no weight.

■ The medical evidence as a whole supports ALJ Karpe's conclusion that Mollo was capable of performing relevant, sedentary work as a bookkeeper. The term "sedentary work" is defined as "involving only occasional standing or walking, the lifting of no more than ten pounds at a time, and the occasional lifting and carrying of light objects." *Schaal v. Apfel*, 134 F.3d 496, 501 n. 6 (1998). "Sedentary work also generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour workday." *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Dr. Lehman's reports from his three examinations in September and November 1994 and February 1995 reveal that Mollo had muscle spasm, tenderness and decreased range of movement of the lumbar spine. However, the examinations also revealed that the plaintiff had good range of right shoulder movement and that her deep tendon reflexes were present. He did not observe atrophy or loss of motor strength or sensation. These particular findings were consistent with the findings

of her consulting neurologist Dr. Moreta who examined the plaintiff twice. Dr. Moreta found that the plaintiff had a grade 5/5 motor strength, normal symmetrical 1+ deep tendon reflexes, and a steady gait. Dr. Moreta ruled out lumbosacral radiculopathy and herniated disc. Significantly, Dr. Moreta did not note any functional restrictions preclusive of work activity. Dr. Moreta's examination in December 1995 revealed an improvement of Mollo's condition and that motor strength and sensation remained unchanged.

Moreover, none of the objective medical evidence support Mollo's claim that her lumbar condition was incapacitating to the extent that she could not perform sedentary work. The MRIs from February 1993 and January and February 1995, and an EMG from January 1995 revealed a small dessicated bulging disc at L5 S1 level and suggested S1 radiculopathy. However, these studies did not reveal any disc herniations or compression of the nerve roots or thecal sac. Further, as previously noted, neurological examinations were normal.

In addition, based on the objective medical evidence and the plaintiff's testimony, Dr. Goodman testified in March 1996 that the diagnostic studies were normal. According to Dr. Goodman, MRI studies showed only a bulging disc, which he opined was a normal finding, and the EMG only suggested radiculopathy. Dr. Goodman pointed out that Mollo's reflexes and sensory perception were found to be normal by different medical sources—a factor consistent with the essentially normal diagnostic studies. Based on the negative medical evidence and despite the plaintiff's subjective complaints, Dr. Goodman was unable to substantiate any evidence of organic disease. Also, according to Dr. Kaye, the January 1995 MRI and Dr. Moreta's November 1994 findings revealed that the plaintiff had the ability to lift and/or carry up to twenty pounds occasionally and ten pounds frequently, as well as sit and stand and/or walk for a total of about six hours each in an eight-hour workday. This assessment exceeds the requirements for the full range of sedentary work.

Furthermore, Dr. Zanger noted that Mollo was cooperative, followed instructions well, expressed her ideas adequately, acted appropriately, could concentrate, had good eye contact, appeared to have adequate judgment, had control of her drives, possessed adequate receptive and expressive language, and had no unusual behavior. Dr. Zanger further noted that the plaintiff appeared restless during testing but did not observe the plaintiff to be in pain. Dr. Zanger indicated that the plaintiff reported that she spent her days at home walking, reading, and watching television and that she went out once or twice a week to eat or visit friends. Indeed, psychological testing revealed that Mollo apparently coped with her pain better than other test samples and possessed the same control as others tested. These opinions provided a sufficient basis for the ALJ to determine that the plaintiff's physical impairments were not disabling. Accordingly, the Court finds that the ALJ correctly applied the proper legal standard in denying the plaintiff's application.

## 2. The ALJ Properly Assessed the Plaintiff's Credibility

While "the subjective element of pain is an important factor to be considered in determining disability," *Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir.1984), "the ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the

claimant," *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979). "If the Secretaries findings are supported by substantial evidence ... the court must uphold the ALJ's decision to discount the claimant's subjective complaints of pain." *Aponte v. Secretary of Health and Human Services*, 728 F.2d 588, 591 (2d Cir.1984). An individual's statements of pain alone cannot establish disability. Instead, there must be objective medical findings that show that the claimant has a medically determinable impairment. *See* 42 U.S.C. § 423(d)(5)(A).

The plaintiff testified that she had trouble sitting or standing for any length of time. The ALJ considered Mollo's subjective complaints of pain but declined to give weight to her testimony because it was not substantiated by the medical evidence. In this regard, the ALJ noted that the diagnostic testing did not corroborate the plaintiff's account of the disabling nature of her back pain. Rather, the tests revealed, at most, the presence of a mild impairment. The plaintiff's abnormalities appeared to be typical findings for someone her age.

In addition, although the ALJ noted that the plaintiff's activities appeared to be limited during the relevant time, he pointed to the "conservative" nature of Mollo's treatment, *i.e.,* some chiropractic treatment and primarily over-the-counter medication. The plaintiff's testimony regarding her physical limitations is also inconsistent with Dr. Zanger's medical evidence which indicated that the plaintiff reported that she spent her days at home walking, reading, and watching television and went out once or twice a week to eat and sometimes visit friends. Thus, the ALJ's decision to discount the plaintiff's subjective complaints of pain is supported by substantial evidence.

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the Commissioner's motion for judgment on the pleadings dismissing the appeal is **GRANTED;** and it is further

**ORDERED,** that Mollo's motion for judgment on the pleadings is **DENIED;** and it is further

**ORDERED,** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**